UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

VERONICA BRANCH, INDIVIDUALLY AND ON BEHALF OF MINORS S.W. AND S.W, et al,

*Plaintiffs*,

v.

CHRIS CHRISTIE et al,

*Defendants*.

Civil Action No. 16-2467 (JMV) (MF)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This case comes before the Court on two motions to dismiss, one filed by Defendants Chris Christie, Christopher Cerf, Cami Anderson, Mark W. Biedron, Joseph Fisicaro, Arcelio Aponte, Ronald K. Butcher, Jack Fornaro, Edithe Fulton, Ernest P. Lepore, Andrew J. Mulvihill, J. Peter Simon, and Dorothy S. Strickland (collectively "State Defendants"), and one filed by the Newark City School District and Keith Barton (collectively "School Defendants"). D.E. 40, 42. In this class action, Plaintiffs essentially attempt to style a toxic tort case as constitutional violations. However, the law does not support such a theory. Moreover, even if the law did recognize Plaintiffs' theory, Plaintiffs' Amended Complaint falls well short of the federal pleading requirements.

The Court reviewed the parties' submissions, and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, both the State Defendants' motion and the School Defendants' motion are **GRANTED**.

I.  **Background & Procedural History**

The following facts are taken from the Amended Complaint (hereinafter "Amended Complaint" or "Am. Compl."). D.E. 33. Plaintiffs are parents of children who attend Newark public schools. Am. Compl. at ¶¶28, 46, 64, 82, 101. They allege that Defendants knowingly exposed the children, along with "thousands" of other Newark students, to water that was contaminated with unsafe levels of lead. *Id.* at ¶¶30, 38. Plaintiffs claim that Defendants have been aware of the contamination since March 2011. *Id.* at ¶120. Plaintiffs further allege that after the contamination was discovered, Defendants "concocted a scheme to cover up the health hazard, not disclose these dangers to the parents, and provide themselves with bottled water." *Id.* at ¶31. Plaintiffs add that Defendants failed to monitor the lead levels in the water or do basic maintenance of the lead filters on the water fountains. *Id.* at ¶¶33-35. According to Plaintiffs, the filters are supposed to be changed after six months of use, but rather than change them, Defendants "canceled work orders to change outdated and lead-saturated filters," allowing "several" filters to be used for upwards of five years. *Id.* at ¶¶35-36. Plaintiffs allege that the children have "tested positive for lead" and now "experience the common symptoms associated with the consumption of lead by children" which include "dizziness, inability to focus, hyper activity, developmental delays, and gastrointestinal issues." *Id.* at ¶¶43, 61, 79, 98, 117.

Plaintiffs state that in 2016, "the public was advised that there were unacceptable levels of lead in the water at Newark Schools," but Defendants "undertook a course of . . . provid[ing] misinformation to parents," telling the community that the water was safe. *Id.* at ¶¶131-132. Plaintiffs cite a test that measured lead in 15% of the Newark schools. *Id.* at ¶134. The Amended Complaint does not indicate when the test was conducted, by whom, or which facilities were tested. Plaintiffs also allege that Defendants deliberately impeded parents from getting their children

tested for lead poisoning, and that Defendants have not taken any steps to remediate the lead in the water. *Id.* at ¶¶136, 139. As to the testing, Plaintiffs complain that it is conducted at locations "far away" from the schools, but do not indicate where the testing occurred. *Id.* at ¶136, It appears that the testing was done elsewhere in Essex County, New Jersey. *Id.* at ¶137.

Plaintiffs have brought several claims against Defendants as part of a proposed class action. *Id.* at ¶¶142-184. Count I is for a violation of Plaintiffs' constitutional right to substantive due process brought under 42 U.S.C. §1983, as is Count II. *Id.* at ¶¶185-204. Count I is brought under a state-created danger theory, and Count II is brought under a violation of bodily autonomy theory. *Id.* Count III is for negligence and gross negligence, Count IV is for negligent infliction of emotional distress, Count V is for intentional infliction of emotional distress. *Id.* at ¶¶205-223. Count VI requests injunctive relief. *Id.* at ¶¶224-227. Count VII is for a declaratory judgment that Plaintiffs' constitutional rights have been violated. *Id.* at ¶¶228-230.

Plaintiffs filed their initial Complaint on May 2, 2016. D.E. 1. They amended their complaint on November 29, 2016. D.E. 33. Both the State Defendants and the School Defendants filed motions to dismiss on December 27, 2016. D.E. 40, 42. Plaintiffs filed their opposition to both motions on January 23, 2017. D.E. 43, 44. Both the State and School Defendants filed their replies on January 30, 2017. D.E. 45, 46.

## II.     Standard of Review

Both the State and School Defendants bring motions to dismiss under Fed. R. Civ. P. 12(b)(1), for lack of federal subject matter jurisdiction, and 12(b)(6), for failure to state a claim on upon which relief can be granted.[1]

---

[1] Defendants also contest the facts alleged in the Amended Complaint, e.g., School Defendants' Reply Brief, D.E. 46, at pg. 4. Defendants claim that the lead issue did not become apparent until 2016 as opposed to 2011. The Newark Defendants add that the lead issue has since been

3

### A. 12(b)(1)

In deciding a Rule 12(b)(1) motion to dismiss, a court must first determine whether the party presents a facial or factual attack because that distinction determines how the pleading is reviewed. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "A facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). Here, Defendants assert the defense of sovereign immunity based on the pleadings, thereby raising a facial attack. *See Perez v. New Jersey*, 2015 WL 4394229, at *3 (D.N.J. July 15, 2015).

### B. 12(b)(6)

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors*,

---

abated. However, the Court cannot determine the truth of these statements without going beyond the face of the Amended Complaint, which is not appropriate at the motion to dismiss stage. *See Fowler*, 578 F.3d at 210. As a result, the Court does not consider Defendants' assertions concerning the alleged facts.

*Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### III. Analysis

The State Defendants argue that the Plaintiffs do not have standing to bring this case, as they cannot show a concrete injury as a result of the conduct alleged. They also argue that the State Defendants are entitled to sovereign immunity under the Eleventh Amendment as state officials, or in the alternative, that they are entitled to qualified immunity in their individual capacities for their alleged actions because the Plaintiffs have not sufficiently pleaded a violation of a clearly established constitutional right. The School Defendants add that because there is no *respondent superior* liability under Section 1983, Defendant Barton cannot be sued even as an individual.

Plaintiffs reply that the lead testing and alleged injuries are enough to provide them with standing. They also allege that Defendants have been charged in their individual, not official capacities, with the exception of Governor Christie. Plaintiffs also argue that they have clearly pleaded a violation of a clearly established constitutional right to bodily integrity that was violated by a state-created danger. They allege Newark Public Schools are not arms of the state, rather they are municipal entities that are represented by private counsel, rather than the Attorney General's Office. They also argue that Defendant Barton had direct involvement in the alleged scheme, making him individually liable under Section 1983.

### A. Plausibility of Allegations

Mere "conclusory allegations against [d]efendants as a group" which "fail to allege the personal involvement of any [d]efendant" are insufficient to survive a motion to dismiss. *Galicki v. New Jersey*, 2015 U.S. Dist. LEXIS 84365, at *8 (D.N.J. June 29, 2015). Plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.* When a number of different defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "*which* [d]efendants engaged in what wrongful conduct." *Falat v. County of Hunterdon*, 2013 U.S. Dist. LEXIS, at *12 (D.N.J. Mar. 19, 2013) (emphasis in original). Otherwise, a Complaint that contains "impermissibly vague group pleading" will be dismissed. *Id.* at *11.

Plaintiffs fail to make the requisite distinctions. Other than in the section labelled "B. Defendants," Plaintiffs do not differentiate between the fifteen named Defendants, all of whom perform very different functions. Instead, the Amended Complaint refers to the Defendants collectively. *See, e.g.*, Am. Compl. at ¶¶31, 33, 35, 37, 39, 44. Even when describing each individual Defendant, the Amended Complaint does no more than make conclusory allegations concerning each Defendant's alleged wrongdoing. *Id.* at ¶¶8-22. Finally, when the Amended Complaint does refer to only "NPS, Barton, Anderson, and Cerf" (rather than all Defendants), it again makes conclusory allegations as to all four collectively. *Id.* at ¶¶24-25. The Amended Complaint fails to set forth plausible allegations as to the alleged wrongdoing of any particular Defendant. For this reason alone, the Amended Complaint is not properly pled and will be dismissed.

However, the Amended Complaint also fails the plausibility requirement for other reasons. For each set of Plaintiffs (parents and children), the Amended Complaint makes identical substantive allegations with the exception of changing the names of the parties. *Id.* at ¶¶45-118. The Amended Complaint does not allege, much less plausibly allege, any of the following facts: which public schools the children attended, when the children attended the schools, how often the children were exposed to the water, whether the children drank from the "several" faucets that had outdated filters, when the children's alleged symptoms started, or when the children were tested for lead poisoning. The alleged symptoms of each child are also identical. It is also unclear where the alleged lead filters were, how many there were, and how many were not changed. The Amended Complaint only refers to "several" such drinking fountains. As to the allegations concerning testing, Plaintiffs do not state which facilities were tested, whether Plaintiff were related to the facility, by whom the tests were conducted, or when the tests occurred. Plaintiffs alleged that they were "misinformed" about the lead in the water, but they cite no specifics about what information they were given, and whether and how it was incorrect. Moreover, they do not state when the misinformation was disseminated, by whom, and to which Plaintiffs.

For the foregoing reasons, the Amended Complaint is dismissed for failing to set forth plausible allegations.

### B. Eleventh Amendment Immunity

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment protect states, as well as their agencies and departments, from suit in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,

100 (1984). However, sovereign immunity does not extend to counties and municipalities. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Bolden v. Southeastern Pa. Transp. Auth.*, 953 F.2d 807, 813-14 (3d Cir. 1991).

This immunity also extends to state employees acting in their official capacities. *See Pennhurst*, 465 U.S. at 101. Thus, the State Defendants seek dismissal of the charges against them in their official capacities. Plaintiffs assert that Defendants have all been sued in their individual capacities, with the exception of Governor Christie. However, the Amended Complaint charges the Defendants in both "their individual and/or official capacities." Am. Compl. at ¶7. To the extent Plaintiffs attempt to charge individual Defendants in their official capacities, those claims are dismissed. Plaintiffs further claim that it is appropriate to sue Governor Christie in his official capacity for prospective relief under *Ex Parte Young*. Yet, the matter is dismissed as to Governor Christie for the plausibility deficiencies noted above. In addition, as is discussed below, all Defendants are entitled to qualified immunity.

As noted, Eleventh Amendment immunity generally does not apply to counties or municipalities. Nonetheless, in some circumstances, such entities may be viewed as "arms of the State partaking of the State's Eleventh Amendment immunity." *Mt. Healthy*, 429 U.S. at 280; *see also Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239 (3d Cir. 2005) ("[A] suit may be barred by the Eleventh Amendment even though a state is not named a party to the action, so long as the state is deemed to be the real party in interest"). To determine whether an entity is an "arm of the state," courts look to three factors: "(1) whether the money that would pay the judgment would come from the state . . . (2) the status of the agency under state law . . . and (3) what degree of autonomy the agency has." *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659

(3d Cir. 1989). Since sovereign immunity is an affirmative defense,[2] the burden of demonstrating the immunity lies on the party asserting it. *See Carter v. City of Phila.*, 181 F.3d 339, 347 (3d Cir. 1999).

Here, the School Defendants contend that they qualify as arms of New Jersey, entitling them to immunity. Even if the state itself is not named in the Amended Complaint, the Court must determine whether the state is the "real party in interest." *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 658 (3d Cir. 1989). The School Defendants rely on two cases decided in this District: *Denkins v. State Operated School District of Camden*, 2016 WL 6683541, at *4 (D.N.J. Nov. 14, 2016) (finding that the Camden City school district was an arm of the state, although "[g]enerally school boards are not considered to be state agencies"); *Camden Cty. Recovery Coalition v. Camden City Bd. Of Educ.*, 262 F.Supp.2d 446, 449 (D.N.J. 2002) (ruling that the Camden City School Board was an arm of the state given that the "vast majority" of their funding came from the state).

The Third Circuit in *Fitchik* set forth three factors that courts can weigh to determine whether or not a lawsuit "against an entity is actually a suit against the state itself." *Fitchick*, 873 F.2d 659. The court there expanded the three factors with certain questions including: "whether the agency has the money to satisfy the judgment" and "how state law treats the agency." *Id.* The Amended Complaint does allege that the since "1995, the State has sought, obtained, and exercised exclusive control over the Newark School System." Am. Compl. ¶8. So this allegation inures to the benefit of the School Defendants, that is, they are an arm of New Jersey. Yet, the School

---

[2] Although it is an affirmative defense, sovereign immunity can be considered at the motion to dismiss stage. If an insufficient showing is made, a court can revisit the issue at the summary judgment stage. *See Sharp v. Kean Univ.*, Civ. No. 14-423, 2014 WL 6908775, at *4 (D.N.J. Dec. 8, 2014).

9

Defendants also ask the Court to take judicial notice of certain facts, including the percentage of the district's funding supplied by the state as well as the level of state control, to conclude that the Newark district is an arm of the state. Defendants' Reply Brief, D.E. 46, at pg. 3. However, such facts are not subject to judicial notice and instead must be proven. Ordinarily, the Court would hold an evidentiary decision before deciding this question, but since the Court is dismissing for other reasons, it does not reach this issue.[3]

### C. Section 1983

42 U.S.C. § 1983 provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights; rather, it provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). In order to state a valid claim for relief under Section 1983, a plaintiff must first allege a violation of a right secured by the Constitution or laws of the United States and, second, a plaintiff must

---

[3] In their Opposition, Plaintiffs contradict the facts plead in the Amended Complaint, arguing that the State only has "pedagogical interest in the school system," while at the same time alleging that the maintenance and facility management of the schools is somehow separate and not controlled by the State. *See* Plaintiff's Opposition to Newark Public School Defendants' Motion to Dismiss, D.E. 43, at p. 10-11. Plaintiffs claim that the State's interest concerns only the "educational" aspect of the Newark's schools. Plaintiffs further assert that "the maintenance of the facilities, including changing filters, ordering enough filters, and cancelling work orders for filters . . . *is not within the purview of the State's involvement* in the pedagogical interest in the school system." *Id.* (emphasis added). Plaintiffs add that there has been "no evidence that the State in whole or part, controls, funds, or in any way directs Defendant Barton, the facilities department, or maintenance of the drinking water at the schools." *Id.* at 11. Thus, Plaintiffs appear to be admitting that their entire case as to the State Defendants should be dismissed because the water system in the school is not within the State's responsibilities. This argument is the exact opposite of what the Plaintiffs assert in the Amended Complaint. The Court is at a loss.

contend that the violation was caused or committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

State officials acting in their official capacities are also immune from suit under Section 1983, as they are not "persons" within the meaning of the statute. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989). As a result, the claims against the State Defendants in their official capacity are also dismissed for this reason. However, plaintiffs can sue state officials in their official capacity for prospective, or forward-looking, injunctive relief to remedy an ongoing violation of federal law. *See Ex Parte Young*, 209 U.S. 123 (1908). The *Ex Parte Young* issue is addressed below.

Municipalities may be liable under Section 1983 if a plaintiff can show the violation of his rights was caused by a municipal policy, practice, or custom. *Monell v. Dep't of Soc. Servs. of N.Y.C.* 436 U.S. 658, 690-91 (1978). Yet, Section 1983 claims cannot be brought under a theory of *respondeat superior*, or supervisory liability. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). Rather, when alleging that a supervisor is liable, Plaintiff bears the burden of showing "personal involvement in the alleged wrongs . . . [which] can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Importantly, defendants in a Section 1983 suit are also entitled to qualified immunity. "Qualified immunity shields government officials from personal liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Paszkowski v. Roxbury Twp. Police Dep't*, No. 13-7088, 2014 WL 346548, at *2 (D.N.J. Jan. 30, 2014) (emphasis added). A court must engage in a two-part inquiry to determine whether qualified immunity applies: (1) "whether the allegations, taken

in the light most favorable to the party asserting the injury show the [defendant's] conduct violated a federal right;" and (2) "whether the law was clearly established at the time of the violation." *Ihlenfeld v. Darby Borough Police Dep't*, No. 16-01990, 2017 WL 132169, at *6 (E.D. Pa. Jan. 13, 2017). "The defendant has the burden of establishing qualified immunity." *Id.* The Supreme Court has ruled that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

As to the Section 1983 claims, the Court finds two deficiencies. First, Plaintiffs allege that there was a policy, practice, or custom that led to the alleged harms. *See, e.g.*, Am. Compl. ¶24. Aside from this conclusory allegation, the Amended Complaint fails to plausibly assert facts in support. The same is true of claims based on the fact that Defendants, in a supervisory role, had personal involvement in the alleged wrongs either through personal direction or with actual knowledge and acquiescence. In sum, besides the plausibility deficiencies noted above, the Amended Complaint also does not plausibly plead facts to support these allegations.

Second, and more importantly, Plaintiffs have failed to show a violation of a clearly defined constitutional right. As such, Defendants are entitled to qualified immunity. While a plaintiff does not have to cite a "case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992). Substantive due process under the Fourteenth Amendment is a very limited right, and courts have been reluctant to expand it. *Id.* Of particular concern is allowing a plaintiff to constitutionalize what are essentially state tort claims. *Id.* at 128. Plaintiffs here argue two theories of constitutional violations under the Fourteenth Amendment's due process protection: state created danger and a violation of bodily integrity.

As to the state-created danger theory, the government generally has no affirmative duty under the Fourteenth Amendment to protect a citizen unless they are in state custody. *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006). However, if "state authority is affirmatively employed in a manner that injures a citizen," or "renders him 'more vulnerable to injury from another source than he or she would have been'" in the absence of state intervention, plaintiffs may bring a Fourteenth Amendment substantive due process claim under a theory of "state created danger." *Id.* The elements of such a claim are that:

1. the harm ultimately caused was foreseeable and fairly direct;
2. the state actor acted with a degree of culpability that shocks the conscience;
3. a relationship between the state and the plaintiff existed such that 'the plaintiff was a foreseeable victim of defendant's acts' or a 'member of a discrete class of persons subject to the potential harm brought about by his actions,' as opposed to a member of the public in general; and
4. a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id.*

In other words, failure to act is not cognizable under the state-created danger theory (unless the plaintiff was in custody at the time). Instead, the state actor must engage in some affirmative act that changes the status quo that either resulted in danger or increased danger to the plaintiff. The Third Circuit in *Bright* did "acknowledge[] that the line between action and inaction may not always be clear," but went on to state that "we have never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised." *Bright*, 443 F.3d at 282.

The liberty interest in bodily integrity guarantees the "right generally to resist enforced medication," the right to be "free from medical invasion," and the right to an abortion. *See Washington v. Glucksberg*, 521 U.S. 702, 777 (1997). Moreover, the current matter is akin to that

13

of *Dorley v. South Fayette Tp. School Dist.*, 129 F.Supp.3d 220, 231 (W.D.P.A. 2015), in that the state-created danger theory is essentially based on the same allegations as the bodily integrity theory. Both are based on the lead in the Newark schools' water and the related allegations.

In a successful state-created danger case, the Third Circuit reversed the district court's grant of defendant's motion to dismiss, finding that plaintiff had sufficiently plead affirmative acts on behalf of two named defendants. *Philips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008). There, the decedent's estate brought suit against the 911 call center that employed her son's murderer, Michael Michalski. Michalski's two government co-workers had supplied him with information on the victim's whereabouts, knowing that it was unlawful for them to do so. *Id.* at 229. When Michalski called the two co-workers the next day and threatened the decedent's life, they made no effort to warn the victim, or the two others Michalski killed, that they might be in danger. *Id.* Again, the Third Circuit found that the two defendants had done something that affirmatively created a situation that placed the victims in danger.

The case Plaintiffs cite to, *L.R. v. Sch. Dist. of Philadelphia*, is inapposite. 836 F.3d 235 (3d Cir. 2016). There, the defendant was a kindergarten teacher who released a student to a woman who was a complete stranger, without asking to see identification or verification that the child was allowed to leave the school, which was in direct violation of school policy. *Id.* at 239-40. The woman took the student from school and later sexually assaulted her. Again, as in *Kniepp* and *Philips*, the state actor—the teacher— affirmatively created the situation that lead to the alleged injuries. Here, Plaintiffs have failed to allege this type of affirmative conduct.

Plaintiffs cite to no cases that support their theory, as pled, of either state-created harm of violation of bodily integrity. The Court also could not find any authority. To the contrary, substantive due process has been found *not* to guarantee a safe working environment or a right to

minimum levels of safety in certain arenas. *See, e.g. Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992), *Searles v. Southeastern Pennsylvania Transp. Authority*, 990 F.2d 789 (3d Cir. 1993). At best, it is unclear whether Plaintiffs' alleged facts regarding lead in the drinking water would constitute a constitutional violation. In fact, there are several cases suggesting that they do not. However, the mere fact that the constitutional rights are unclear means that the Defendants are entitled to qualified immunity under the second prong of the analysis.

Because Defendants are entitled to qualified immunity, the Section 1983 claims along with the injunctive relief claim derived from Section 1983 are dismissed with prejudice.

### D. Declaratory Judgment Act

The Declaratory Judgment Act does not confer subject matter jurisdiction on federal courts; there must be an independent basis of federal subject matter jurisdiction to obtain a remedy under the Act. *Allen v. DeBello*, 861 F.3d 433, 444 (3d Cir. 2017). As discussed above, the Court no longer has subject matter jurisdiction over this case since the federal claims have been dismissed. As a result, Count VII is dismissed.

### E. Remaining State Law Claims

Federal district courts have supplemental jurisdiction over state law claims related to those brought under federal statutes. 28 U.S.C. §1367(a). The court can, in its discretion, decline to exercise supplemental jurisdiction if it has dismissed the claims over which it had original jurisdiction. 29 U.S.C. §1367(c)(3). As discussed above, the federal claims have been dismissed, and so the Court declines to exercise its supplemental jurisdiction over the remaining state law claims. Thus, Counts III, IV, and V are dismissed without prejudice.

## IV. Conclusion

For the reasons stated above, the State Defendants' motion is **GRANTED**, and the School Defendants' motion is **GRANTED**. An appropriate Order accompanies this Opinion.

Dated: January 8th, 2018

John Michael Vazquez, U.S.D.J.